**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| SHERON GABRIEL TERRELL, | § | |
| TDCJ # 01779108, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:16-0179 |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Sheron Gabriel Terrell, who proceeds *pro se*, is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Terrell filed a petition for a federal writ of habeas corpus seeking relief from a state court conviction (Dkt. 1), which he later amended (Dkt. 4, Dkt. 5). Respondent Lorie Davis filed an answer (Dkt. 16) and a copy of the state court records (Dkt. 17, Dkt. 18). Petitioner filed a response (Dkt. 31). Petitioner's claims are ripe for decision. Having now considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that the petition should be **denied** for the reasons that follow.

## I.    BACKGROUND

### A.    Procedural Background

Petitioner was charged by indictment with possession of a controlled substance

(cocaine). In March 2012, he was tried and sentenced before a jury in the 56th Judicial District Court for Galveston County, Texas, Hon. Lonnie Cox presiding, Case No. 11CR1752 (Dkt. 17-18, at 93-96).[1] He pleaded true to an enhancement and was sentenced to thirteen years confinement in TDCJ (*id.* at 93).

Terrell appealed to the First Court of Appeals, which affirmed on January 7, 2014. *Terrell v. State*, No. 01-12-00404-CR, 2014 WL 50802 (Tex. App.–Hou. [1st Dist.], 2014, pet. ref'd); *see* Dkt. 17-7. On November 19, 2014, the Texas Court of Criminal Appeals refused Terrell's petition for discretionary review (Dkt. 17-16).

On August 24, 2015, Terrell executed a *pro se* application for state habeas relief (WR-81,510-02) (Dkt. 18-21, at 4-62; Dkt. 18-22, at 1-26). The Texas Court of Criminal Appeals remanded the application to the trial court to allow the trial judge to enter findings of fact and conclusions of law. *Ex parte Terrell*, No. WR-81,510-02, 2016 WL 1471903 (Tex. Crim. App. Apr. 13, 2016); Dkt. 18-18. On June 22, 2016, after the trial court denied relief, the Court of Criminal Appeals denied the habeas application on the trial court's findings without written order (Dkt. 18-14).

On July 6, 2016, Petitioner timely executed a *pro se* petition for writ of habeas corpus (Dkt. 1) in these proceedings. He subsequently amended his petition with leave of the court. *See* Dkt. 4, Dkt. 5, Dkt. 6.

---

[1] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

### B.  Factual Background

In March 2012, Terrell was convicted by a jury of possession of cocaine in the amount of more than one gram and less than four grams and sentenced to thirteen years in TDCJ (Dkt. 17-18, at 93-96).  The court of appeals summarized the relevant facts as follows:

> Officer Hassan Mustafa of the Galveston Police Department was patrolling near the intersection of 27th Street and Avenue K, a frequent site of criminal drug transactions. He was standing outside his car, a "blacked out" patrol unit, when he observed Terrell and an unidentified white man walk up to each other and exchange something quickly, hand-to-hand. Mustafa recognized Terrell, as he had previously stopped him for minor misbehavior, "like walking in the roadway," and knew that he was involved in the drug trade.
>
> Terrell and the white man parted ways. Mustafa reentered his car and made a U-turn to approach Terrell from behind. When Terrell saw him, he jumped to the sidewalk, behind a parked car. Mustafa told him, "Hey, come here." Terrell then reached down with his hands and threw something on the ground. Since Mustafa could not see Terrell's hands during this motion, he pulled out his taser and switched commands, telling Terrell to place himself on the ground. Terrell complied and was placed in handcuffs. Once a backup unit arrived, Mustafa found a small plastic bag five or six feet away from where he had detained Terrell. The bag contained a beige rock that proved to be crack cocaine. After the rock was discovered, Terrell addressed the officer by name, saying: "Mustafa, you pulled a magical maneuver on me."
>
> Before his trial, Terrell moved to suppress evidence of the crack rock. The trial judge held a hearing and denied the motion. At trial, a jury convicted Terrell of possessing between one and four grams of cocaine. It found true the prosecution's enhancement allegation—that Terrell previously had been convicted of felony evidence tampering—and sentenced him to thirteen years imprisonment and a $2,500 fine. This appeal followed.

*Terrell*, 2014 WL 50802, at *1.

As referenced in the appellate opinion, the trial court held a pretrial suppression

hearing on March 23, 2012 (Dkt. 18-1). At the hearing, the Court addressed two motions to suppress, one filed by Terrell's trial counsel and a second that Terrell filed *pro se*.[2] Terrell raised many of the same allegations he relies on in these federal habeas proceedings, challenging factual statements in Mustafa's arrest warrant affidavit and the magistrate judge's probable cause finding.[3] First, Terrell testified that he had not exchanged anything with the white man and had not thrown anything to the ground (Dkt. 18-1, at 42, 46). His counsel cross-examined Mustafa and highlighted inconsistencies in his statements, arguing that Mustafa was too far away to have observed the transaction as he claimed and thus lacked probable cause (*id*. at 26-31, 52-53). Counsel's advocacy at the hearing supported a key assertion in Terrell's *pro se* motion to suppress, namely, that it was "a physical impossibility" for Mustafa to have personally observed both the transaction and Terrell throwing an object to the ground because Mustafa had not actually made a U-turn as he claimed. Terrell asserted that, rather than making a U-turn, Mustafa actually had traveled around the block in his patrol car between the time of the

---

[2]     Before trial, Petitioner's appointed trial counsel filed a motion to suppress evidence of cocaine, arguing that the officers had obtained the drugs as the result of a warrantless seizure of Terrell without probable cause (Dkt. 17-18, at 41-43). Terrell filed a *pro se* pretrial motion to suppress arguing that Mustafa's arrest warrant affidavit contained "deliberate falsehoods" (*id*. at 21-23).

[3]     Officer Mustafa's arrest warrant affidavit, executed on June 18, 2011 within hours of arresting Terrell, contained many of the same facts recited in the appellate opinion, including that Mustafa had observed Terrell and an unknown white male "doing a hand to hand transaction"; that Terrell ran behind a vehicle when Mustafa gave him a verbal command to get on the ground; that Mustafa observed Terrell raise his arm and throw a small object from his right hand; and that, after detaining Terrell, Mustafa walked back to the area where he had seen Terrell throw an object on the ground and observed a small clear plastic bag with two small, beige rocks, which field-tested positive for cocaine (Dkt. 17-18, at 24-25). Based on Mustafa's affidavit, a magistrate found probable cause for further detention and set bond at $60,000 (*id*. at 13-14).

transaction and the detention.[4]

Second, Terrell testified at the hearing that Mustafa had not actually found drugs on the ground, as Mustafa averred in his arrest warrant affidavit. *See* Dkt. 18-1, at 48 (Terrell testified that Mustafa "never found anything"). Rather, Terrell claimed that a third officer, who arrived twenty minutes after Mustafa detained Terrell, "got out of his car . . . [and] told Officer Mustafa he found something on the ground" (*id*.). This testimony supported his theory in his *pro se* motion (Dkt. 17-18, at 22), which he continues to pursue in these federal habeas proceedings, that the third officer "planted" drugs at the scene. On cross-examination by Terrell's counsel, Mustafa provided an account consistent with his affidavit, testifying that he had found the drugs on the ground as soon as the first backup arrived, which was less than a minute after he had detained Terrell, and that the unidentified third officer, who arrived "a minute or two later," had not found the drugs (Dkt. 18-1, at 33-35).

The trial court denied the motion to suppress, ruling that Mustafa's testimony was credible and that Terrell lacked standing on the suppression issue because he did not acknowledge any connection to the cocaine found on the ground (*id*. at 54-55). The court also found "ample probable cause" for the arrest (*id*. at 55). After trial, the court issued

---

[4]    *See* Dkt. 17-18, at 21 (*pro se* motion to suppress argues that Mustafa's claim in his arrest warrant affidavit that he had watched Terrell conduct the transaction and also throw something to the ground from behind a car was physically impossible because Mustafa was "traveling away from [Terrell] in [the] patrol car [when he observed the transaction] and had to circle 3 1/2 blocks in order to come back to [Terrell's] location"); *id*. at 22 (alleging that Mustafa's "seeming ability to see around corners in a moving vehicle is a physical impossibility" and that Mustafa could not have seen Terrell "walk away, run around a car and throw 'something' all while operating a motor vehicle and traveling a 3 1/2 block route . . . being unable to keep [Terrell] in line of sight").

findings of fact and conclusions of law reiterating its holdings and specifically found, based on the evidence at the suppression hearing, that Mustafa had observed Terrell engage in a transaction, that Mustafa also observed Terrell "throw something from his hand while Mr. Terrell was standing behind a car," that Mustafa then found a "small plastic bag in containing a beige rock in the vicinity of where Mr. Terrell had previously thrown the object," and that the rock tested positive for cocaine (Dkt. 17-18, at 104). The court concluded that Mustafa had a reasonable suspicion of criminal activity when detaining Terrell and, after finding the drugs, had probable cause to arrest him (*id*. at 105).

Terrell's trial began on March 27, 2012 (Dkt. 18-4). Officers Mustafa and the first backup officer both testified for the prosecution, as well as an evidence custodian and the forensic scientist who tested the evidence. Terrell testified in his own defense, against the advice of his counsel (*id*. at 91). He testified that he had not exchanged drugs that night but had spoken to a white man who asked him for money (*id*. at 93-94). As at the suppression hearing, he testified that the unidentified third officer, who arrived more than ten minutes after Terrell was detained, handed a package to Mustafa and said that he had found drugs (*id*. at 99-101). The jury returned a guilty verdict and assessed punishment of thirteen years in TDCJ and a $2500 fine.[5]

The trial court appointed Calvin D. Parks to represent Terrell on direct appeal. After Parks failed to file a timely brief, the appellate court abated the proceedings and

---

[5]    Terrell's sentence was enhanced by a prior conviction, to which Terrell pleaded true (Dkt. 17-18, at 93). A second enhancement was abandoned by the State (*id*.).

remanded to the trial court for findings (Dkt. 17-8).  The court then found that good cause existed to remove Parks and appointed substitute appellate counsel, James DuCote (Dkt. 17-19, at 10).

Terrell's appellate brief filed by DuCote raised two issues.  First, Terrell claimed that Officer Mustafa should not have been permitted to testify that the area he was patrolling was a "high crime area" without inquiry into Mustafa's expert qualifications. The appellate court rejected this ground, holding that Terrell had failed to preserve error for review.  *Terrell*, 2014 WL 50802, at *2.  Second, he claimed that the trial court erred in its denial of his motion to suppress evidence of cocaine because Terrell's initial detention by Mustafa, during which the evidence was discovered, was not supported by a reasonable suspicion of criminal activity.  The appellate court held that the record at the suppression hearing was sufficient to establish reasonable suspicion to detain Terrell because Mustafa had witnessed a quick exchange between Terrell and a white man, because the transaction occurred in an area known for frequent drug trades, and because Terrell was known to Mustafa as a person involved in the drug trade.  *Id.* at *3. Therefore, the "resulting discovery of the cocaine could not have been the consequence of an unlawful investigatory detention," and the trial court's denial of the motion to suppress was not error.  *Id.*  The appellate court affirmed Terrell's conviction.

Terrell did not file a timely petition for discretionary review with the Texas Court of Criminal Appeals.  However, he filed a *pro se* application for habeas relief (WR-81,510-01).  The Court of Criminal Appeals granted habeas relief, based on the recommendation of the trial court, because Terrell's appellate counsel had "failed to

timely notify [Terrell] that his conviction had been affirmed," and granted Terrell an opportunity to file an out-of-time petition for discretionary review. *Ex parte Terrell*, No. WR-81,510-01, 2014 WL 2921839 (Tex. Crim. App. June 25, 2014); *see* Dkt. 18-11, at 2. Terrell then filed a *pro se* petition for discretionary review (Dkt. 17-17), which the Court of Criminal Appeals refused on November 19, 2014 (Dkt. 17-16).

On August 24, 2015, Terrell executed his state habeas application (WR-81,510-02) raising fourteen claims for relief, including challenges to the trial court's denial of the motion to suppress and claims that his trial and appellate counsel were constitutionally ineffective (Dkt. 18-21, at 4-62; Dkt. 18-22, at 1-26).[6] The trial court ordered counsel to provide affidavits in response to Terrell's claims (*id*. at 32-35). Appellate counsel DuCote timely filed his affidavit (*id*. at 41-47), but trial counsel did not. On or about March 7, 2016, the trial court clerk transmitted Terrell's habeas application to the Court of Criminal Appeals. *Ex parte Terrell*, No. WR-81,510-02, 2016 WL 1471903 (Tex. Crim. App. Apr. 13, 2016); *see* Dkt. 18-18. The Court of Criminal Appeals held the

---

[6] Terrell's fourteen claims in his state habeas application were as follows: (1) Mustafa lacked probable cause for the arrest and the drugs were obtained unlawfully; (2) the drugs and Terrell's conviction were obtained based on an illegal search and seizure; (3) the prosecution suppressed evidence regarding Mustafa's falsehoods, the unidentified third officer, and patrol car video; (4) the prosecution knowingly presented false testimony from Mustafa regarding circumstances of the arrest; (5) Terrell's trial counsel was constitutionally ineffective; (6) Terrell's first appellate counsel was constitutionally ineffective; (7) the prosecution failed to disclose patrol car video recording; (8) Terrell's second appellate counsel was constitutionally ineffective; (9) Terrell was denied compulsory service of process on the unidentified third officer; (10) Terrell was denied the right to confront and cross-examine the unidentified third officer; (11) Terrell was "actually innocent" because he could have established reasonable doubt; (12) Terrell was denied due process of law due to the violations alleged in the other claims in his application; (13) the prosecution relied on Mustafa's affidavit which was "fabricated"; and, (14) the prosecutor's closing argument about Mustafa's credibility was inflammatory and improper. *See* Dkt. 18-21, at 4-30 (state habeas application); *see also id*., at 31-54 (petitioner's memorandum); *id*. at 55-62 (petitioner's exhibits); Dkt. 18-22, at 1-26 (petitioner's exhibits).

application in abeyance and remanded to the trial court to allow the trial judge to enter findings of fact and conclusions of law, noting that trial counsel had not yet submitted an affidavit. *Terrell*, 2016 WL 1471903, at *1.

On May 11, 2016, trial counsel filed an affidavit that addressed Petitioner's claims (Dkt. 18-19, at 8-10). On May 16, 2016, the trial court entered findings of fact and conclusions of law recommending denial of habeas relief, based in part on counsels' affidavits. The findings and conclusions read as follows:

> This Trial Court finds that there is no necessity for a fact finding hearing because there is ample evidence from the State's answer, the State's supplemental answer, Counsel's affidavit (attached), and Appellate Counsel's affidavit (attached) and the Trial Court's record to rule on the relief sought.
>
> This Trial Court finds that the representations contained in the State's Answer, State's Supplemental Answer, and said affidavits are correct and credible. This Trial Court finds Applicant hasn't shown his trial attorney or appellate attorney were ineffective. This Trial Court finds the outcome of the proceedings wouldn't have been different but for counsels' alleged errors.
>
> Moreover, the Trial Court finds that there are no controverted previously unresolved facts or issues exist which would entitle Applicant to relief and that Applicant's claims have no legal merit.
>
> This Trial Court recommends relief be denied.

(*id*. at 26-27). The Court of Criminal Appeals then denied the application on the trial court's findings without written order (Dkt. 18-14). These federal proceedings followed.

## II.    LEGAL STANDARDS

### A.    *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and

rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal quotation marks and citation omitted). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B. The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was

adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under the AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 517 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citation and quotation marks omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), the AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme

Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (internal citation and quotation marks omitted).

On factual issues, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

## III.  <u>ANALYSIS</u>

Terrell's amended federal petition (Dkt. 5) lists fourteen claims for relief:

1.  The magistrate violated his Fourth Amendment rights when he abandoned his judicial role and "failed to perform his neural and detached function."

2.  The State violated the Fourth Amendment when it deprived him a full hearing and therefore denied him due process of law.

3.  The State suppressed the identify of a third police officer on the scene of Petitioner's arrest and therefore denied him due process of law.

4.  The State used or failed to correct false testimony and therefore denied Petitioner due process of law.

5.  Petitioner's trial counsel rendered constitutionally ineffective assistance in connection with the following:

    a.  Failure to litigate Fourth Amendment claims, in particular, Claims 1 and 2 above;

b.    Failure to impeach Officer Mustafa with a prior inconsistent statement;

c.    Failure to object to prosecutorial misconduct;

d.    Failure to investigate the identity of the third police officer on the scene;

e.    Failure to produce evidence in support of Petitioner's pretrial motion to suppress;

f.    Failure to file a motion for continuance;

g.    Failure to object to erroneous jury instructions;

h.    Failure to object to the prosecutor's closing argument.

6.    Petitioner's first appellate counsel rendered constitutionally ineffective assistance when he filed a frivolous *Anders* brief.

7.    The State failed to disclose Officer Mustafa's video recording and therefore deprived him of due process of law.

8.    Petitioner's second appellate counsel rendered constitutionally ineffective assistance when he filed a frivolous appellate brief.

9.    Petitioner was denied compulsory service on the unidentified third officer at the scene of his arrest, in violation of his Sixth Amendment rights.

10.    Petitioner was denied the opportunity to confront and cross-examine the unidentified third officer in violation of his Sixth Amendment rights.

11.    The constitutional errors at Petitioner's trial led to a miscarriage of justice in violation of Petitioner's right to due process of law.

12.    Petitioner was denied due process of law under the Fourteenth Amendment.

13.    Petitioner was "maliciously prosecuted" based on a "fabricated" warrant from Officer Mustafa, in violation of his constitutional rights.

14.    The prosecutor's closing argument "vouched for the credibility" of the Officer Mustafa in violation of Petitioner's right to due process of the law.

(Dkt. 5; *see* Dkt. 4).

The Court will address Terrell's claims as follows: (1) Fourth Amendment claims (Claims 1, 2, and 13); (2) Sixth Amendment claims (Claims 9 and 10); (3) Due Process Claims (Claims 3, 4, 7, 11, 12, and 14); (4) ineffective assistance of trial counsel claim (Claim 5); and (5) ineffective assistance of appellate counsel claims (Claims 6 and 8).[7]

## A.     Arrest and Detention Claims (Claims 1, 2, and 13)

Petitioner raises three claims that challenge the lawfulness of his arrest and detention, invoking the Fourth and Fourteenth Amendments. First, in Claim 1, Terrell claims that the magistrate who found probable cause shortly after Terrell's arrest "abandoned his judicial role and failed to perform his neutral and detached function" (Dkt. 5, at 1). Second, in Claim 2, Terrell claims that he was denied a full and fair hearing regarding the allegedly false statements in Officer Mustafa's arrest warrant affidavit (*id*.). Third, in Claim 13, Terrell claims that he was "maliciously prosecuted" based on Mustafa's "fabricated" arrest warrant (*id*. at 3). Terrell's arguments in these habeas proceedings rely on facts raised at his pretrial suppression hearing and at trial, including assertions about whether Mustafa traveled around the block before detaining

---

[7]     Terrell apparently has abandoned his claim of actual innocence, which he raised in his original petition but not his amended petition. *See* Dkt. 1, at 20 (claiming that the errors listed in his other claims "probably resulted in the conviction of one who was actually innocent" and deprived the jury of critical evidence that would have established a reasonable doubt). The Fifth Circuit does not consider freestanding habeas claims of actual innocence in the absence of independent constitutional violations, *see Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir.), *cert. denied,* 139 S. Ct. 573 (2018), although the Supreme Court has not resolved the issue. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993). In any event, for the reasons stated below, Terrell's other habeas claims lack merit and, moreover, his factual assertions in these proceedings do not demonstrate that the state courts' determination of guilt was an unreasonable determination of the facts in light of the evidence presented in the state courts. *See* 28 U.S.C. § 2254(d)(2).

him, rather than making a U-turn as Mustafa claimed, and about the late-arriving third officer whom Terrell claims planted the drugs at the scene (*see* Dkt. 31, at 18-24). Terrell apparently argues that, based on defects in the arrest warrant and pretrial proceedings, the drugs from his arrest should have been suppressed under Fourth Amendment authority.

Federal habeas relief is not available for Terrell's Fourth Amendment claims.[8] Under *Stone v. Powell*, federal habeas relief is not available for a claim that evidence used at trial was obtained pursuant to an unconstitutional search or seizure if the state "provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). If the state makes the process available, the *Stone* bar applies, even if the petitioner did not actually litigate the issue:

> It is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*. In short, the *Stone* bar applies even where the petitioner did not avail himself of the litigating opportunity provided by the state courts.

*Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012) (internal quotation marks, citations, and footnotes omitted). To overcome the *Stone* bar, a habeas petitioner must show that the state's courts "systematically and erroneously" prevent adjudication of Fourth Amendment claims. *Moreno*, 450 F.3d at 167. A petitioner's showing that the state

---

[8]     To the extent Terrell argues that the alleged falsehoods in Mustafa's arrest warrant affidavit violated his due process rights, this argument is addressed below in the context of Claims 4 and 14. Terrell's argument that his trial counsel rendered ineffective assistance when litigating Fourth Amendment issues is addressed below in the discussion of Claim 5.

courts erred in the adjudication of the Fourth Amendment in his particular case is insufficient. *Id.* (a state court's "errors in adjudicating Fourth Amendment claims are not an exception to *Stone*'s bar").

Because Texas "has processes that allow defendants . . . to pursue Fourth Amendment claims at the trial level and on direct appeal," the Fifth Circuit has held that habeas claims like Terrell's are barred by *Stone*. *See Register*, 681 F.3d at 628. In *Moreno*, the petitioner claimed that the Texas courts had erred in denying his motion to suppress the murder weapon, arguing that the affidavit used to secure the search warrant contained "materially false statements." *Moreno*, 450 F.3d at 166. The Fifth Circuit rejected the claim under *Stone* because the petitioner had failed to show that Texas courts systematically prevent adjudication of Fourth Amendment claims. *Id.* at 167.

In Terrell's case, the state courts did not prevent the adjudication of his claims. To the contrary, although he did not prevail, he received a full opportunity to litigate his Fourth Amendment claim at the pretrial suppression hearing and again on direct appeal. *See* Dkt. 18-1 (suppression hearing); Dkt. 17-9 (direct appeal brief). *Stone* therefore prevents habeas consideration of his claims. *See Moreno*, 450 F.3d at 166-67.

Habeas relief for Claims 1, 2, and 13 is denied.

## B. Claims Regarding Third Officer (Claims 9 and 10)

Terrell's petition raises two claims regarding his constitutional right to compel the presence of, and to confront, the unidentified third police officer at the scene of his arrest. These claims arise under the Sixth Amendment, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him [and] to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI.

In Claim 9, Terrell claims he was denied "compulsory service of the unknown third officer" to compel his presence as a witness (Dkt. 5, at 2). The Sixth Amendment guarantees a criminal defendant the right to have compulsory process for obtaining witnesses in his favor. *Boyer v. Vannoy*, 863 F.3d 428, 451 n. 122 (5th Cir. 2017), *cert. denied,* 139 S. Ct. 54 (2018); *see Washington v. Texas*, 388 U.S. 14, 23 (1967) (holding that the petitioner in this case was "denied his right to have compulsory process for obtaining witnesses in his favor" because the State arbitrarily denied him the right call a witness "whose testimony would have been relevant and material to the defense").

Terrell apparently claims in these proceedings, as he did at trial, that the third officer planted drugs at the scene of his arrest. However, he fails to make any showing that the third officer's testimony would have been either favorable or material to his defense. His amended petition does not recite any facts relevant to the claim, and his superseded petition merely alleges, with no supporting detail, that the third officer had "presented the beige rocks" to Mustafa and that the unidentified officer's testimony was "exculpatory and impeaching" (Dkt. 1, at 17-18). Moreover, in state habeas proceedings, his former attorneys provided affidavits refuting his claims. Trial counsel stated that he had investigated the issue and was satisfied "that further inquiry into the possibility of a third officer who might have 'planted' contraband in order to build a case against [Terrell] would have been a fruitless investigation" (Dkt. 18-19, at 9). He also explained that the jury had been made aware of, and had rejected, Terrell's theory regarding the

third officer (*id*).   Appellate counsel investigated the issue and concluded that, despite

trial counsel's diligent investigative efforts, "no evidence" supported Terrell's claims:

> Officer Mustafa testified that the third officer only brought him a drug
> detection kit. There was no evidence that the third officer took any other
> part in the matter. I investigated trial counsel as to whether he made diligent
> effort to determine the identity of the third officer, and attempt to locate
> him. Trial counsel had made significant efforts to identify and locate the
> third officer, but was unsuccessful. Trial counsel ultimately determined
> that, even if the third officer could have been identified and located, he had
> arrived late, and had no significant part in the event, and concluded that his
> presence would have been of no benefit, and might have been detrimental
> to Appellant.

(Dkt. 18-22, at 44).   Based in part on these affidavits, the state habeas court held that

Petitioner was not entitled to relief on his Sixth Amendment claims (Dkt. 18-19, at 26-

27).   Terrell makes no showing in these proceedings that the state habeas court's denial

of relief was unreasonable under § 2254(d).

In Claim 10, Terrell claims that he was denied his right to confront and cross-

examine the unidentified third officer (Dkt. 5, at 3; *see* Dkt. 1, at 18).   The Confrontation

Clause does not allow admission of "testimonial statements" from a witness who does not

testify at trial unless the declarant is unavailable and the defendant has had a prior

opportunity to cross-examine.   *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *see*

*United States v. Santos*, 589 F.3d 759, 762 (5th Cir. 2009).   Testimonial statements

include, for example, affidavits, depositions, prior testimony, or statements taken by

police officers during interrogation.   *Crawford*, 541 U.S. at 51-52.   A statement that is not

testimonial cannot violate the Confrontation Clause.   *Brown v. Epps,* 686 F.3d 281, 286

(5th Cir. 2012); *see Dorsey v. Stephens*, 720 F.3d 309, 317 (5th Cir. 2013) (the

Confrontation Clause "applies only to statements offered to prove the truth of the matter asserted").

Terrell does not allege, and the record does not show, that the unidentified third officer made a statement, wrote a report, or gave testimony regarding Terrell. Therefore, the Confrontation Clause is inapplicable. *See Brown*, 686 F.3d at 286. Terrell fails to show that the state habeas court's denial of relief was unreasonable under § 2254.

### C.   Due Process Claims

Terrell raises multiple due process claims, which the Court will address as follows: first, Claims 3 and 7 regarding alleged suppression of evidence; second, Claims 4 and 14 regarding allegedly false testimony by Officer Mustafa; and third, Claims 11 and 12 alleging general due process violations.

### 1.   Suppression of evidence (Claims 3 and 7)

Petitioner raises two due process claims regarding suppression of evidence, asserting that the prosecution suppressed the third officer's identity and a video recording from Mustafa's police vehicle. The Due Process Clause requires the prosecution to disclose evidence that is favorable to the defense and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). This duty to disclose "extends to all evidence known not just to the prosecutors, but 'to the others acting on the government's behalf in the case, including the police.'" *Floyd*, 894 F.3d at 161-62 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). Evidence is material under *Brady* "where it simply demonstrates 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at

166 (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)).   Impeachment evidence "is favorable *Brady* evidence."   *Id.* at 163; *see U.S. v. Bagley*, 473 U.S. 667 (1985).

In Claim 3, Petitioner argues that prosecutors violated his due process rights when they failed to disclose the identity of the third officer because the officer's testimony was "favorable" to Terrell (Dkt. 5, at 1).   Terrell presents no factual support for his claim that the officer's testimony would have been "favorable" or "material" as required by *Brady* and its progeny.   Although he makes conclusory allegations that the third officer "was necessary to raise an adequate defense" and that there was a "reasonable probability" of a different result if he had testified, he provides no specific facts supporting his allegations (Dkt. 1, at 12-13). Moreover, on state habeas review, the court credited counsels' affidavits, which concluded that potential testimony from the third officer was neither material nor favorable.   *See* Dkt. 18-19, at 9 (trial counsel stated that his investigation had not yielded evidence supporting Terrell's theory and concluded that further investigation into the issue of the third officer would have been "fruitless"); Dkt. 18-22, at 44 (appellate counsel concluded that the third officer "had no significant part in the event" and that the issue of his presence "would have been of no benefit" to Terrell).   Terrell fails to show that the state habeas court's denial of relief on this claim was unreasonable under § 2254(d).

In Claim 7, Terrell claims that his due process rights were violated by the prosecution's "fail[ure] to agree" to the defense request for disclosure of video evidence from Mustafa's patrol vehicle (Dkt. 5, at 2).   He presumably argues that the video would

have favored his defense. However, he provides no facts supporting a conclusion that the video evidence in question actually exists. Trial counsel stated in his state habeas affidavit that he had no indication of video evidence:

> In this case the State did not produce any in-car video in discovery, but it is my customary practice to seek discovery of all materials in the possession of the State, and it is the policy of the Galveston County Criminal District Attorney to produce materials which might contain any exculpatory materials. There was no indication in the material produced to me to indicate that there was any in-car video, whether exculpatory or not. Also, in the 56th District Court the Court enters an agreed discovery order in which the State is ordered to allow the copying and examining of all material evidence prior to trial, and I received no notice of any in-car video or third officer.

(Dkt. 18-19, at 8). Appellate counsel also investigated and found no indication that a video existed:

> I investigated Appellant's concern as to the possible existence of an "in car" video, and found that there was no mention of an "in car" video in any of the trial proceedings. I discussed the issue with trial counsel who advised me that he had done an intensive investigation of the possibility of an "in car" video, and did not find one. Moreover, the 56th Judicial District promulgated a proscribed discovery order requiring the State to turn over to the defense any video/recordings which might bear on the case, including those which might be exculpatory to Appellant. None had been turned over. I concluded that the trial attorney had investigated and determined that there was no "in car" police video.

(Dkt. 18-22, at 43). The state habeas court credited these affidavits and denied relief. In these proceedings, Terrell fails to present any facts supporting the existence of a video, much less that any such video was material and favorable to his defense, as *Brady* requires. *See Floyd*, 894 F.3d at 161. He also fails to demonstrate that the state habeas court's denial of relief was unreasonable under § 2254.

Habeas relief on Terrell's due process claims regarding the suppression of evidence is denied.

### 2. Mustafa's allegedly false testimony (Claims 4 and 14)

Petitioner raises two due process claims regarding Officer Mustafa's testimony, alleging that the prosecuted failed to correct false testimony from Mustafa and then improperly vouched for his credibility during closing arguments. The Due Process Clause protects criminal defendants against prosecutorial misconduct. *See Greer v. Miller*, 483 U.S. 756, 765 (1987).

In Claim 4, Terrell alleges that prosecutors violated his due process rights when they used and failed to correct Mustafa's alleged falsehoods (Dkt. 5, at 2). Under *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the prosecution's "known solicitation of false testimony" may constitute a violation of due process:

> To establish a due process violation based on the State's knowing use of false or misleading evidence, a habeas petitioner must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, *inter alia,* it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that it could have affected the jury's verdict.

*Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (internal citations, quotation marks, and alterations omitted). In this case, Terrell continues to advance arguments he made in state court, including that Mustafa testified falsely that he had U-turned, rather than traveling around the block, before detaining Terrell, and that it was physically impossible for Mustafa to observe the transaction as Mustafa claimed (Dkt. 4, at 1-2). Terrell's arguments were rejected by the trial court at the suppression hearing, by the jury

at trial, and by the appellate court on direct appeal.[9]   Moreover, the state habeas court rejected the claim, based in part on the affidavits submitted by his former counsel stating that the issue lacked merit.[10]   In these habeas proceedings, because Terrell presents no facts supporting his claim that the prosecutors knew that Mustafa's testimony was false, among other required showings, he fails to demonstrate a due process violation.  *See Barrientes*, 221 F.3d at 753 (*Giglio* claim requires showing that prosecutors knowingly used false or misleading evidence).   For essentially the same reasons, he fails to demonstrate that the state habeas court's denial of relief was contrary to or an unreasonable application of clearly established federal law under § 2254(d).

In Claim 14, Terrell alleges that the prosecutor violated his due process rights when he vouched for Mustafa's credibility during closing arguments (Dkt. 5, at 3). Terrell apparently faults the prosecutor for invoking Mustafa's law enforcement record when refuting Terrell's theory that Mustafa had planted drugs on Terrell.  *See* Dkt. 18-4, at 118-19 (prosecutor argued to the jury in closing that the defense theory that Mustafa planted the drugs was "just ridiculous" because a police officer with four to five years of experience would not "risk his job just to wrongfully convict somebody" and, if Terrell's

---

[9]     *See e.g.*, *Terrell*, 2014 WL 50802, at *1 (appellate court determined that Mustafa observed Terrell's transaction with the white male and also observed Terrell throw something on to the ground); *id*. (appellate court determined that Mustafa "made a U-turn to approach Terrell"); *id*. (appellate court credited Mustafa's testimony that, after backup arrived, Mustafa found the bag with rocks that tested positive for crack cocaine).

[10]    *See* Dkt. 18-19, at 10 (trial counsel averred, "[Terrell] complains that the statements of Officer Mustafa in the Affidavit For Warrant of Arrest and Complaint are obviously untrue, false, and not to be accepted or believed, but all of the accounts of [Terrell] are the veritable truth.   However this was not that obvious to twelve jurors and the Judge"); Dkt. 18-22, at 43 (appellate counsel stated that he investigated and "determined that the issue relating to the arrest warrant did not have merit").

version of events were true, then Mustafa would have committed aggravated perjury on the witness stand). Improper statements by a prosecutor at trial may violate due process if they infect the trial with unfairness. *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008). A petitioner must show "that the prosecutor's misconduct was persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Id.* (internal citation, quotation marks, and alteration omitted); *see Barrientes*, 221 F.3d at 753 ("A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted") (internal quotation marks and citations omitted). As above, these claims were litigated by Terrell at pretrial proceedings, at trial, and on direct appeal, and the state habeas court denied relief. Terrell makes no showing that the prosecutor's statements actually were improper, nor that such statements rendered his trial fundamentally unfair. *See Geiger*, 540 F.3d at 307-08. He also fails to show that the state habeas court's denial of relief was unreasonable under § 2254(d).

### 3. Contingent claims (Claims 11 and 12)

Petitioner raises two general due process claims that are contingent on other claims in his petition. First, in Claim 11, he alleges that the cumulative constitutional errors at his trial led to a "miscarriage of justice" and that no reasonable juror would have found him guilty but for the prosecution's errors (Dkt. 5, at 3). Second, in Claim 12, he alleges without elaboration that he was denied "due process of law" under the Fourteenth Amendment (*id.*).

Respondent's briefing asserts that the claims are unexhausted but does not present record support for the exhaustion argument. In any event, to the extent Terrell properly exhausted these claims in state habeas (*see* Dkt. 18-21, at 52 (Claim 12)), they are wholly contingent on Petitioner's other due process and Sixth Amendment claims that, for the reasons discussed above, lack merit. Therefore, these claims do not entitle Terrell to habeas relief.

### D.  Ineffective Assistance of Trial Counsel (Claim 5)

Petitioner alleges in Claim 5 that he was denied effective assistance of trial counsel under the Sixth Amendment. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .
>
> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at

189 (internal citation and quotation marks omitted). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles*, 514 U.S. at 434. The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (internal citations and quotation marks omitted). Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden. The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).  *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

In these proceedings, Petitioner raises eight claims regarding trial counsel, many of which overlap with the claims discussed above: (a) trial counsel failed to litigate Fourth Amendment issues; (b) trial counsel failed to impeach Officer Mustafa with a prior inconsistent statement, namely, his arrest warrant affidavit; (c) trial counsel failed to object to the prosecution's presentation of Mustafa's allegedly false testimony; (d) trial counsel failed to investigate the identity of the unidentified third officer; (e) trial counsel failed to present evidence in support of Terrell's motion to suppress; (f) trial counsel failed to file a motion for continuance; (g) trial counsel failed to object to an erroneous jury instruction; and (h) trial counsel failed to object to the prosecutor's closing argument regarding Officer Mustafa's credibility  (Dkt. 5, at 2).

### 1.    Litigation of Fourth Amendment issues (Claim 5(a))

Terrell claims that his trial counsel was ineffective because he failed to litigate the Fourth Amendment claims related to Mustafa's arrest warrant affidavit and the magistrate proceedings (Dkt. 5, at 2; *see* Dkt. 31, at 26).[11]  However, the state court record in this case defeats Terrell's claim.  In pretrial proceedings, trial counsel filed a motion to

---

[11]    This claim, which involves the same facts as the Fourth Amendment claims in Claims 1 and 2, may be raised as an ineffective assistance of counsel claim.  *See Moreno*, 450 F.3d at 168 n.6 ("*Stone v. Powell* does not bar an ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate a Fourth Amendment claim").

suppress raising Fourth Amendment issues (Dkt. 17-18, at 41-43). Counsel also represented Terrell at the suppression hearing, at which he litigated issues from Terrell's *pro se* motion to suppress.[12] At trial, Terrell's counsel presented the jury with Terrell's allegations regarding Mustafa's allegedly false statements in the arrest affidavit, the absence of probable cause for the arrest, and other Fourth Amendment issues. *See* Dkt. 18-4, at 91-102 (Terrell testified to his version of events, against advice of counsel). The record provides no support for Terrell's claim that his counsel failed to litigate Fourth Amendment issues. To the extent Terrell argues that counsel's litigation of the issue was inadequate, he fails to identify any specific failure or deficiency by counsel. The fact that the trial court and jury decided adversely to Terrell is insufficient to support a *Strickland* claim. *See Strickland*, 466 U.S. at 689 (the "distorting effects of hindsight" must be eliminated on habeas review because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable").

In state habeas proceedings, trial counsel's affidavit stated that the Fourth Amendment issues regarding the magistrate and arrest warrant had been litigated and lacked merit (Dkt. 18-19, at 9-10). Appellate counsel also opined that issues lacked merit and had been diligently presented by trial counsel (Dkt. 18-22, at 43-44). The state habeas court determined that Terrell had not shown that his trial counsel was ineffective

---

[12] Counsel cross-examined Mustafa on many of the issues raised in the *pro se* motion, including whether Mustafa could have observed the transaction given the distance and lighting, whether Mustafa had U-turned or driven around the block between observing the transaction and detaining Terrell, and the role of the third officer who arrived late to the scene. *See* Dkt. 18-1, at 26-28, 34-35).

and that "the outcome of the proceedings wouldn't have been different but for counsels' alleged errors," finding counsels' affidavits on the issue to be "correct and credible" (Dkt. 18-19, at 26-27). In these federal habeas proceedings, Terrell alleges no specific facts that demonstrate that trial counsel's litigation of Fourth Amendment issues fell below an "objective standard of reasonableness," nor that he was prejudiced by any deficient performance by counsel. *See Rhoades*, 852 F.3d at 431-32. Terrell therefore fails to meet his burden to show that the state habeas court's denial of relief was unreasonable under § 2254.

### 2. Impeachment of Mustafa (Claim 5(b))

Terrell claims that his trial counsel was ineffective because counsel failed to impeach Officer Mustafa with an allegedly inconsistent prior statement, namely, the arrest warrant affidavit. He does not provide factual support for the claim in his amended petition (Dkt. 5, at 2), but apparently relies on his allegations that Mustafa could not have observed the events as he claimed given his location at the time of the transaction and the route he travelled before detaining Terrell (Dkt. 4, at 1-2; Dkt. 31, at 26-27). He alleges that trial counsel's decision not to impeach Mustafa based these discrepancies was not a "reasonable strategic decision" under *Strickland* and that he was prejudiced because, had counsel objected to Mustafa's allegedly false testimony, the trial court would have excluded Mustafa's testimony (*id.*).

As above, the state court record refutes the factual basis of Terrell's claim. In fact, trial counsel cross-examined Mustafa on the alleged falsehoods identified by

Terrell.[13]   Terrell thus fails to show that trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by the performance. Terrell also fails to demonstrate that the state habeas court's determination, which denied relief on Terrell's ineffective assistance claim and on his other claims based on the alleged falsity of Mustafa's testimony, was unreasonable under § 2254(d).

### 3.    Objection to Mustafa's testimony (Claim 5(c))

Terrell claims that his trial counsel was constitutionally ineffective because he failed to object to prosecutorial misconduct, in particular, the prosecutor's presentation of Mustafa's testimony.   Like multiple other claims in this petition, this claim is based on Terrell's allegation that Mustafa's arrest warrant affidavit contained false statements about the events leading up to his arrest. Terrell claims that he informed the trial court in pretrial proceedings about the falsehoods, but that the State nevertheless presented Mustafa's testimony.  He claims that trial counsel's failure to object to the testimony was unreasonable and was not strategic under *Strickland* (Dkt. 31, at 27-28).[14]

As stated above regarding Claim 4, Petitioner has made no showing that the prosecution at his trial presented false testimony and, in fact, and the state courts rejected all of Terrell's claims based on the alleged falsity of Mustafa's statements.  Given that the

---

[13]    *See* Dkt. 18-4, at 42-53 (trial counsel questioned Mustafa regarding Mustafa's location during the arrest and the distance from the place where Terrell made an exchange with the white man, the lighting in the area, the direction Mustafa's patrol car was facing when he observed the exchange, the route Mustafa drove to reach Terrell, and where Mustafa detained Terrell, among other topics).

[14]    Respondent argues that Terrell failed to exhaust this claim on state habeas review and Terrell disputes the issue, claiming that he presented the issue to the Texas Court of Criminal Appeals in his state habeas memorandum (*see* Dkt. 31, at 27).  The Court does not address the exhaustion issue because, even if Terrell properly exhausted this claim, it clearly lacks merit.

underlying issue lacked merit, Terrell has failed to demonstrate that trial counsel's performance was deficient and, moreover, fails to demonstrate prejudice under *Strickland*. To the extent Terrell argues that his counsel was ineffective merely because the trial court did not rule in Terrell's favor on the suppression motion, or because the jury found Terrell guilty despite counsel's arguments, his claim lacks merit. *See Strickland*, 466 U.S. at 689.

Petitioner has failed to show in these federal proceedings that the state habeas court's denial of habeas relief was unreasonable under § 2254.

### 4. Investigation of unidentified third officer (Claim 5(d))

Terrell claims that, although he informed trial counsel of the unidentified third officer on the scene of Terrell's arrest and the need to investigate his identity, trial counsel failed to conduct an investigation (Dkt. 31, at 28-30). As held in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014); *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. The reasonableness of counsel's investigation decisions "can be assessed by taking into account the defendant's own statements, actions, and information supplied by the defendant; whether counsel has reason to believe that pursuing certain investigations would be fruitless or even harmful; resource constraints; and whether the information that

might be discovered would be of only collateral significance." *Hoffman v. Cain*, 752 F.3d 430, 440 (5th Cir. 2014) (internal quotation marks, citations, and footnotes omitted). To establish prejudice for failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

In these proceedings, Terrell provides no specific facts demonstrating that the third officer's presence at trial would have benefited his defense or supported his theory that the third officer planted evidence against him (*see* Dkt. 31, at 28-30). He therefore fails to show "what the investigation would have revealed" or "how it would have changed the outcome of the trial." *See Miller*, 420 F.3d at 361. Although he asserts that further investigation into the third officer's identity would have yielded favorable information that the officer planted evidence against him, the state habeas court rejected this claim, instead crediting counsels' affidavits which reached the opposite conclusion. *See* Dkt. 18-19, at 9 (trial counsel investigated and satisfied himself that further investigation into the unidentified third officer would have been "fruitless"); Dkt. 18-22, at 44 (appellate counsel concluded that "[t]here was no evidence that the third officer took any other part in the matter"). Terrell fails to demonstrate that the state habeas court's denial of relief on this claim was unreasonable under § 2254.

### 5. Presentation of evidence supporting suppression (Claim 5(e))

Terrell claims that trial counsel failed to present evidence in support of his motion to suppress and, in particular, his argument that Mustafa made false statements (Dkt. 5, at

2; *see* Dkt. 31, at 31-32 (alleging that Mustafa's affidavit "contained known falsehoods" and that a "falsity challenge" should not be limited to the "4 corners of the warrant affidavit")). He states that dispatch records, patrol vehicle logs, and patrol vehicle video recordings "would have been good evidence to introduce at the suppression hearing and trial" (*id*. at 32). Terrell does not specify what the additional evidence would have shown or otherwise make a showing of prejudice. *See Rhoades*, 852 F.3d at 432; *Miller*, 420 F.3d at 361. To the extent he faults trial counsel for failure to investigate these records, he fails to show that trial counsel's investigative decisions were unreasonable under the circumstances. *See Strickland*, 466 U.S. at 691.

Petitioner fails to show deficient performance or prejudice under *Strickland* and fails to demonstrate that the state habeas court's denial of relief on this claim was unreasonable.

### 6. Motion for continuance (Claim 5(f))

Terrell argues that trial counsel was ineffective because he failed to file a motion for continuance. In response to Respondent's briefing stating that Terrell had failed to allege any grounds for such a motion or when trial counsel should have filed it (Dkt. 16, at 28-29), Terrell explains that trial counsel's "numerous cancelled suppression hearings until the trial was the next working day was not strategic" and that trial counsel "took four (4) months [after Terrell's *pro se* suppression motion was filed] to finally have a [suppression] hearing" (Dkt. 31, at 31).

Based on the statements in Terrell's response, he apparently bases this claim on the fact that the trial court reset the suppression hearing several times before holding it on

March 23, 2012. Terrell points to no evidence that trial counsel was responsible for, or requested, the re-settings and, more fundamentally, has not alleged any prejudice from the four-month delay about which he complains. The trial court held a pretrial suppression hearing and heard all of Petitioner's arguments, including those in his *pro se* motion to suppress.

Petitioner fails to show that the re-settings of his suppression hearing were the result of trial counsel's deficient performance or that he was prejudiced under *Strickland*, and fails to demonstrate that the state habeas court's denial of relief was unreasonable.

### 7.      Objection to jury instruction (Claim 5(g))

Terrell alleges that trial counsel failed to object to an erroneous jury instruction, but does not identify the instruction at issue (Dkt. 5, at 2). His response (Dkt. 31) does not address Claim 5(g).[15] Terrell's cursory allegation regarding an unidentified, allegedly erroneous jury instruction fails to demonstrate that trial counsel rendered deficient performance or that he was prejudiced under *Strickland*. He also fails to demonstrate that the state habeas court's determination denying relief under *Strickland* was unreasonable.

### 8.      Objection to closing argument (Claim 5(h))

Terrell alleges that trial counsel was constitutionally ineffective because he failed

---

[15]      Petitioner's response states that he was not "able to adequately finish" his response "due to the interference of the Respondent's subordinates throwing away the petitioner's court documents" in a separate case, Civil Action No. 9:17-CV-132 (Dkt. 31, at 32). He provides no further explanation as to how his response purportedly was impeded and has filed no additional argument since filing the response on September 7, 2018.

to object to the prosecutor's improper closing argument (Dkt. 5, at 2).[16] He does not

identify the allegedly improper argument in his amended petition, and his response (Dkt.

31) does not address the issue. To the extent Terrell's claim relies on the same facts as

his due process claim regarding the prosecutor's closing argument vouching for

Mustafa's credibility, he fails to identify a meritorious objection that trial counsel failed

to make and therefore fails to show deficient performance or prejudice under *Strickland*.

He also fails to demonstrate that the state habeas court's denial of relief was unreasonable

under § 2254.

### E.     Ineffective Assistance of Appellate Counsel (Claims 6 and 8)

Terrell raises two claims of ineffective assistance of appellate counsel. A criminal

defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*,

469 U.S. 387 (1985); *Dorsey*, 720 F.3d at 319-21. Claims of ineffective assistance of

counsel on appeal are governed by *Strickland* standards, which require a petitioner to

show that counsel's performance was deficient and that the petitioner was prejudiced. *Id.*

at 319 (citing *Strickland*, 466 U.S. at 687). As with *Strickland* claims regarding trial

counsel, the court's review is "highly deferential," and "doubly deferential" on habeas

review. *Id.* A habeas petitioner must overcome "a strong presumption that counsel's

conduct falls within the range of reasonable professional assistance." *Higgins v. Cain*,

720 F.3d 255, 265 (5th Cir. 2013) (internal quotation marks and citation omitted).

---

[16]     Respondent argues that Terrell failed to exhaust this issue on state habeas review. The Court need not address the exhaustion issue because, even if the Court were to assume that Terrell properly exhausted this claim, it clearly lacks merit.

Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[] out weaker arguments on appeal'" and focus on key issues. *Higgins*, 720 F.3d at 265 n.41 (quoting *Jones*, 463 U.S. at 751-52).

In these proceedings, Terrell alleges in Claim 6 that his first appellate attorney, Calvin Parks, rendered ineffective assistance when he "filed a frivolous *Anders* brief after being on the appeal ten months" (Dkt. 5, at 2).[17] However, when removing Parks, the trial court immediately appointed substitute appellate counsel (Dkt. 17-19, at 10). Terrell's new appellate counsel filed a merits brief raising two issues, which received full consideration from the appellate court. Therefore, to the extent Parks' performance was deficient, Terrell fails to make the required showing of prejudice. *See Dorsey*, 720 F.3d at 319. He also fails to show that the state habeas court's denial of relief was unreasonable under § 2254.

In Claim 8, Terrell alleges that his second appellate attorney filed a "frivolous appellate brief" on the merits of his claims (Dkt. 5, at 2). In his superseded petition, he

---

[17]     *See* Dkt. 17-19, at 10 (trial court finds good cause to remove Parks because he filed only an *Anders* brief) An *Anders* brief, which typically accompanies an attorney's motion to withdraw from representation, represents to the court that the appeal lacks an issue of arguable merit. *See Anders v. Calif.*, 386 U.S. 738 (1967); *U.S. v. Flores*, 632 F.3d 229, 231 (5th Cir. 2011).

alleged specifically that counsel failed to raise all issues requested by Terrell, including issues regarding the police vehicle's video, the presence of an unidentified third officer, and alleged falsehoods in the arrest warrant affidavit (Dkt. 1, at 16-17). Counsel's affidavit addressing Terrell's claims explained his method for handling an appeal and stated that, in reviewing Terrell's case, he initially spotted twelve potential issues, including issues raised in Terrell's state habeas application (Dkt. 18-22, at 43). He then narrowed the potential issues from twelve to two (*id*. at 44). He concluded that Terrell's claims regarding the arrest warrant affidavit and magistrate proceedings lacked merit; that the police video referenced by Terrell did not exist; that the presence of an unidentified third officer was not significant in Terrell's arrest and did not present a meritorious issue for appeal; and that trial counsel's investigation and litigation of the issues were not constitutionally ineffective (*id*. at 43-44).

The state habeas court credited counsel's affidavit when rejecting the claim of ineffectiveness. *See* Dkt. 18-19, at 26-27 (finding that "the outcome of the proceedings wouldn't have been different but for counsels' alleged errors"). An appellate attorney's decision not to raise all available claims on appeal, without more, is insufficient for habeas relief. *See Dorsey*, 720 F.3d at 319. Terrell's cursory arguments in this Court fail to demonstrate that appellate counsel rendered deficient performance or prejudiced him when he selected the issues for appeal. They also fail to demonstrate that the state habeas court's denial of relief was unreasonable under § 2254.

## IV.    CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks omitted).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the record and the applicable law, the Court concludes

that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.    CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1.    The petition for a writ of habeas corpus filed by Sheron Gabriel Terrell is **DENIED**.

2.    All pending motions, if any, are **DENIED as moot**.

3.    A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 1st day of July, 2019.

George C. Hanks Jr.
United States District Judge